STATE of South Dakota ex rel. Julie
WIEBER, Plaintiff, Appellant,

v.

Vern HENNINGS, Defendant
and Appellee.

No. 13290.

Supreme Court of South Dakota.

Considered On Briefs Aug. 11, 1981.

Decided Oct. 14, 1981.

Joseph G. Rimlinger of East River Legal
Services, Sioux Falls, for plaintiff, appel-
lant.

Vern Hennings, pro se.

HENDERSON, Justice.

### ACTION

Julie Wieber (appellant) appeals from a
judgment entered by the trial court which
directed Vern Hennings (appellee) to pay
$100.00 per month as child support for the
minor child Angela Marie Wieber until said
child reaches the age of sixteen years. Ap-
pellee was also ordered to pay $5,659.38 in
arrearages and medical expenses. On ap-
peal, appellant contends that under the
statutory scheme of this state, an arbitrary
classification exists between legitimate and
illegitimate children with regard to the du-
ration of lawfully required support pay-
ments. Appellee filed no brief and is pro-
ceeding pro se.

### FACTS

The State of South Dakota ex rel. appel-
lant commenced this action by filing a com-
plaint alleging appellee to be the father of
the aforementioned minor child. Accompa-
nying this complaint was an assignment of
child support rights from appellant, the
child's mother, to the State in return for
ADC benefits. Subsequent to a probable
cause hearing and various filings by the
parties, appellee signed an affidavit of pa-

ternity. A judgment was accordingly entered declaring appellee to be the father of the child.

Following this judgment, the trial court conducted a hearing which resulted in appellee being ordered to provide support for the child until her sixteenth birthday. This appeal ensued.[1]

## ISSUE

Does SDCL 25–8–29 violate the United States Constitution because it denies equal protection to illegitimate children? We hold that it does.

## DECISION

 This Court has utilized a two-part test in determining whether the equal protection clause has been violated.[2] *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975). The first part of this test is "whether the statute does set up arbitrary classifications among various persons subject to it." *Id.*, at 415, 233 N.W.2d at 333. The second part of the test is the application of the appropriate standard of review to the arbitrary classification. *Dorian v. Johnson*, 297 N.W.2d 175 (S.D.1980).

Initially, then, it must be determined if SDCL 25–8–29, when read in conjunction with the other applicable statutes, creates an arbitrary classification between illegitimate and legitimate children. SDCL 25–8–29 reads as follows:

> If the finding or verdict be against the defendant, the court shall give judgment against him declaring paternity and for support of the child.
>
> The judgment shall be for annual amounts, equal or varying, having regard to the obligation of the father under

§§ 25–8–1 to 25–8–3, inclusive, as the court directs, until the child reaches the age of sixteen years.

> The payments may be required to be made at such periods or intervals as the court directs.

We find it unnecessary to quote verbatim the various codified references establishing a parent's duty to support his or her minor child, legitimate or illegitimate. Suffice it to say, under the statutory scheme of this state, such a duty exists.[3] Furthermore, this Court has recently held that a minor child has an inherent right to support from its natural parents; this right exists at common-law and is separate and distinct from any statutory obligation. *Johansen v. Johansen*, 305 N.W.2d 383 (S.D.1981).

In South Dakota, minors are defined as individuals being less than eighteen years of age. SDCL 26–1–1. Also, the authority of a parent ceases upon the child attaining majority. SDCL 25–5–17(3).

By its express terms, SDCL 25–8–29 abrogates the right of an illegitimate child to receive support from its natural father until the illegitimate reaches majority. As a consequence, we hold that SDCL 25–8–29 creates an arbitrary classification between legitimate and illegitimate children.

 We next review SDCL 25–8–29 under the appropriate standard. *Dorian v. Johnson*, supra. A legislative classification based upon illegitimacy must bear an evident and substantial relation to the particular interest the statute is designed to serve. *United States v. Clark*, 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980); *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) (plurality opinion); *see id.*, 439 U.S. at 279, 99 S.Ct. at 530, 58 L.Ed.2d at

1. We note that the State of South Dakota did not intervene pursuant to SDCL 15–6–24(c). The record reflects, however, that appellant's notice of appeal was served upon the Attorney General on November 20, 1980; moreover, appellant's brief to this Court was also served upon the Attorney General on January 15, 1981. Hence, we believe that the office of the Attorney General was given a reasonable opportunity to intervene and apparently chose not to do so.

2. United States Constitution, Amend. 14, § 1 provides:

 No state shall . . . deny to any person within its jurisdiction the equal protection of the laws.

3. *See* SDCL 25–8–1; SDCL 25–8–2; SDCL 25–7–7; SDCL 25–7–16; SDCL 25–7–18; and SDCL 25–7–20.

518 (BRENNAN, J., dissenting); *see also Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

A perusal of recent U.S. Supreme Court cases indicates that the bulk of the Court's decisions run against distinctions in state law that discriminate against illegitimates, such as those in a wrongful death statute allowing only legitimate children to recover damages for the death of a parent, *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), a workmen's compensation law allowing legitimates to first claim, prioritizing illegitimates with "other dependents," and awarding payment only if first-priority claimants do not exhaust the collectable limit, *Weber v. Aetna Casualty & Surety Company*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), and a state statute designed to deny illegitimates welfare benefits which legitimate children could obtain, *New Jersey Welfare Rights Organization v. Cahill*, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973).

But the Court has upheld distinctions in state or federal law that gave priority to others (including illegitimates who had been legitimated) over illegitimates who had merely been acknowledged in intestate succession, *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), reh. den. 402 U.S. 990, 91 S.Ct. 1672, 29 L.Ed.2d 156 (1971), and required children other than those who were legitimate, adopted, or eligible to inherit property from the insured under state law (these were automatically qualified) to show dependency (as defined in the statute) on the deceased before being declared eligible to collect surviving children's benefits under social security, *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

In *Parham v. Hughes*, 441 U.S. 347, 352, 99 S.Ct. 1742, 1746, 60 L.Ed.2d 269, 275 (1979) (citations omitted), the U. S. Supreme Court stated:

The Court has held on several occasions that state legislative classifications based upon illegitimacy—i. e., that differentiate between illegitimate children and legitimate children—violate the Equal Protection Clause. The basic rationale of these decisions is that it is unjust and ineffective for society to express its condemnation of procreation outside the marital relationship by punishing the illegitimate child who is in no way responsible for his situation and is unable to change it.

*Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) dealt with a situation apposite to the case at bar. In *Gomez*, the Court held that a Texas statute which created a judicially enforceable right to support for legitimate children from their natural fathers but denied such a right to illegitimates was a denial of equal protection and therefore unconstitutional. In reaching its decision, the majority in *Gomez* stated (citations omitted):

[A] State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is "illogical and unjust." We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination.

409 U.S. at 538, 93 S.Ct. at 875, 35 L.Ed.2d at 60.

Similarly, in the instant case, we cannot say that there exists any permissible legislative purpose which bears a substantial relationship to the classification in question. We accordingly hold that SDCL 25–8–29 is violative of the equal protection of the U.S. Constitution.

■ The unconstitutional provisions of a statute may be extracted and the remainder left intact. *Direct Auto Buying Service, Inc. v. Welch*, 308 N.W.2d 570 (S.D.1981); *South Dakota Ass'n, etc. v. State Dept. of Revenue*, 280 N.W.2d 662 (S.D.1979).

Hence, SDCL 25–8–29 is hereby qualified to read as follows:

If the finding or verdict be against the defendant, the court shall give judgment against him declaring paternity and for support of the child.

The judgment shall be for annual amounts, equal or varying, having regard to the obligation of the father under §§ 25–8–1 to 25–8–3, inclusive, as the court directs, until the child reaches the age of sixteen years.

The payments may be required to be made at such periods or intervals as the court directs.

The judgment of the trial court is affirmed as modified and remanded in accord with the now announced qualification of SDCL 25–8–29.

DUNN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., and MORGAN, J., dissent.

MORGAN, Justice (dissenting).

I respectfully dissent because the appellant lacks standing on appeal to challenge the decision of the trial court. This is a jurisdictional issue that we can raise *sua sponte. Long v. Knight Const. Co., Inc.*, 262 N.W.2d 207, 209 (S.D.1978).

I have no disagreement with the majority's discussion or resolution of the constitutional issue, but I am personally opposed to the exercise of our rather awesome authority to declare a legislative act unconstitutional without a full briefing and argument. In this instance, no brief was filed to support the constitutionality of the statute. Moreover, we considered the case on our non-oral calendar. Although the State had notice of the appeal, it failed to appear. I am amazed at the failure of the Attorney General's Office to fulfill what I consider a statutory duty to defend the legislation.

In SDCL 25–8–10, an action for support of a child may be maintained by the mother or by the public authorities, if the child is or is likely to be a public charge. In this case, the action was commenced not by the mother but by the Department of Social Services

on the relation of the mother. At no point in the proceedings below did the mother move to intervene.

In *Olesen v. Snyder*, 249 N.W.2d 266, 269 (S.D.1976), this court said, "Section 3145 of the Revised Code of 1919 limited the right of appeal to a 'party aggrieved.' This language was deleted in § 33.0701, SDC 1939 (now SDCL 15–26–1); however, this court has held that the right of appeal remains so limited. (citation omitted) In addition, the 'party aggrieved' must have been a party at some stage to the action or proceeding below."

The State's commencement of the action on the relation of Ms. Wieber does not make her a party. *Ex rel.* means, "legal proceedings which are instituted by the attorney general (or other proper person) in the name and on behalf of the state, but on the information and at the instigation of an individual who has a private interest in the matter, are said to be taken 'on these relations' (*ex relatione*) of such person, who is called a relator." Black's Law Dictionary 522–3 (5th ed. 1979).

*Thomas v. Miser*, 49 S.D. 329, 207 N.W. 58 (1926), minimized the importance of *ex rel.* in a paternity proceeding. There, the court permitted the child's mother to appeal. The facts, however, indicate that the mother was a complainant and party of record. *Thomas* began as a state-prosecuted criminal action. Later, the mother initiated a civil action under the Uniform Illegitimacy Act. The county prosecutor then dismissed his criminal action and conducted the civil action for the mother. This is not the case with Ms. Wieber.

Although, in the instant case, Ms. Wieber did appear and the record reveals no objection to that appearance, the complaint alleges that Ms. Wieber had assigned "all right to any child support payments heretofore or hereafter due and payable by the defendant to and on behalf of the assignor [Wieber] or the defendant shown on the assignment . . . ." The same paragraph also named the plaintiff as the Department of Social Services of the State of South

Dakota. Finally, the relief prayed for in the complaint is for the reimbursement of ADC payments until the State is no longer fulfilling the defendant's support obligation. Clearly, this complaint applies only to the State's interest.

I would dismiss the appeal.

I am authorized to state that WOLL-MAN, Chief Justice, joins in this dissent.